Case number 1939-20, Golf Village North LLC and others versus City of Powell OH and others. Oral arguments not to exceed 15 minutes per side. Mr. Miller for the appellants. Good morning. Good morning, your honor. May it please the court. Joe Miller on behalf of I'm joined this morning by my client representative Trey Giller, an officer of those entities. Your honor, the trial court granted judgment to the City of Powell as a matter of law based upon a single passing reference to the property at issue as retail on an illustrative drawing that itself is labeled simply as a quote concept plan, unquote, an argument that was not even raised affirmatively by Powell in his motion for summary judgment. The trial court did so despite what was a vast amount of unrebutted evidence that the property at issue is actually zoned planned commercial and entitled to the broad uses under that classification, including the proposed residential hotel. The evidence before the trial court included a dozen pages of development text that repeatedly referred to this property as planned commercial. The testimony of Golf Village representatives that it was specifically rezoned in order to allow for planned commercial uses, and even the sworn testimony of defendant David Betts, Powell's own zoning inspector, who acknowledged that this property is zoned planned commercial with all the uses that come with that and the zoning is in place for decades to come. In ruling, what is the point of the development plan? So there's the zoning regime, but then there's this development plan that your client submitted. How does that operate? Does it operate to limit your right to development based upon what's in that plan or does it do something else? Only for the specific prohibitions contained within the development text, your honor. The zoning resolution, and this is undisputed, allows for planned commercial developments. And so what you do is you present a plan with its text and the whole text is the plan itself and that is approved and has the force of law as the operative zoning upon this property. So here the property was rezoned planned commercial. The only limitations upon use contained within that text is against salvage yards, slaughterhouses, adult-oriented uses. Do we look to that plan then? Is that sort of the operative regulatory regime? It's really no longer in a sense of zoning backdrop, but it's actually this plan that's been submitted because the plan has to be approved, right? The plan has to be approved and was approved here to amend this text as proposed as the force of law. You still look to the underlying zoning and this is undisputed. You look to 14.03 as to what the permitted uses are in a planned commercial area. And instead the development plan requirements only require that you identify the prohibited uses. We did that. His honor, Judge Watson hung his decision upon something called a concept plan, which in no way was meant to limit the permitted uses within the planned commercial area. And so the fact of the matter is the residential hotel fits squarely within the broad permitted uses of the planned commercial zoning. And as it's labeled concept plan, it merely was suggesting potential uses. Google tells me your honor. What is it in the plan that authorizes a hotel? So in the zoning, the zoning specifically refers to a motel, I think is a possible use. Yes. The plan does not. The plan. Go ahead. I'm sorry. Respectfully, your honor, the plan rezoned the property as planned commercial. So your baseline for permitted uses is everything within section 14.03. The requirements of the zoning resolution merely say when you propose development text, itemize those uses that are prohibited. We did so. It was approximately seven uses. And the property then becomes owned as planned commercial. What the trial court judge did was find a passing reference to retail in something called a concept plan and say, aha, you've limited the permitted uses, but actually the development text, at least a half dozen times in the record, your honor identifies this as planned commercial for a variety of commercial uses permitted under 14.03. We know not only that the development text controls and has the force of law, but we know also under the federal decision cited to you, uh, at page 11, I believe of our reply, the judge Watson hanging everything on that concept plan is contrary to Ohio law. In that case, much as here, there was merely a drawing submitted with the development text that labeled the development shopping center. Well, in fact, later, someone counsel, what you call development text, you hang that on the phrase planned commercial, not that it includes specifically hotels, but that in general, this residential hotel would be a commercial type operation. And then you rely on the no restrictions by implication. Is that a fair reading of what you're saying? Well, what we rely upon is it was zoned planned commercial, your honor. And therefore anything allowed under 14.03 is allowed on the property. And frankly, it's a very broad zoning classification that allows for motels, anything that services the anything not specifically restricted any restrictions upon property need to be strictly construed against the government and in favor of the free use of property. Judge Watson did not do that. Judge Watson also, I understand that point for the zoning regulations, because the city writes those. And so you and your clients need fair notice, but you submit the plan. And so if you submit the plan, why would we similarly interpret that? I guess against the, the zoning entity when this is beyond the zoning law. No, you're not interpreting it against the zoning authority. In fact, what we did was rezone it planned commercial. And therefore under the zoning resolutions terms, you're entitled to all permitted uses within 14.03. The only thing, the zoning resolution required at 14.06 was that we itemize prohibited uses because the default requirement in the zoning resolution, nor under Ohio law that a landowner in a rezoning must itemize all permitted uses. Instead, they're entitled to the full panoply of permitted uses in the zoning classification to which the property is rezoned. Here, that was planned commercial. Did you need further approvals? I mean, I'm still trying to understand what the point of this development plan is. You've defined it as saying it shows you propose the things that you can't do. You agree you can't do. Did you need further approval from Powell? You would need an administrative site plan review, but not as to the use because once it's zoned plan commercial, and this is frankly under Ohio zoning law, cut and dry. Once it's zoned plan commercial, you are entitled to all of the permitted uses itemized in the plan commercial district, which is set forth at section 14.03 in some ways appear to be kind of asking for permission. We ask permission. I'm sorry, Your Honor, I don't mean to cut you off. Just trying to figure out what all the different requirements and obligations are. Kudos to those of you practicing this area. It's quite confusing, I'll have to say. Well, I frankly think I can simplify it for you because what we did in 2002 was seek a legislative rezoning that rezoned this entire sub area to planned commercial, and that entitles you to the benefit of all of the resolution required you to itemize all permitted uses. They're already in 14.03. Instead, to get your development plan and text approved, you needed to itemize those prohibited uses. That's what the zoning resolution required. That's what we did. And so frankly, the residential hotel is clearly permitted under 14.03. So why would our client then, in my mind, sort of ask for no? Okay. So what was the point of that step if they already had the authority to do it? Your Honor, that's a good question. The property is rezoned and you're entitled to all of the planned commercial uses as of that moment. Later on, when you seek to turn dirt and build, you need a zoning certificate. The zoning inspector has to say, okay, I've reviewed this proposed use. It's in full conformity with the zoning resolution. We asked for that use determination. As Dave Betts, the zoning inspector, acknowledged, it's part of his job to give, and he would not give it to us, even though he understood it as he testified at page 89 and 90 of his deposition that it was part of his job duties and that developers rely upon that use determination. We were merely- Let me make sure I've got the nomenclature here, because you used two terms, use determination and zoning certificate. And from some of the reading, I thought of those as two separate steps. It sounded to me like just now you said that the zoning certificate would be the use determination. Can you help me there? Your Honor, you're correct that it was a two-step process. You get a use determination, which even though Mr. Betts admitted was part of his job duty that he refused to give, once you have that, then you can go forward and apply administratively for a zoning certificate. Would the use determination be an actual piece of paper of some sort? Because their side, which I will ask them, is that some of the time they do say what you just said, which is that we won't give it to you because you're wrong. But at other points in their briefing, they say, well, there is no such thing as a use determination, that this is something that your side has just made up. They have said that there is no such thing. The only problem is the person charged with that duty has said under oath at 89 and 90 in his deposition, it's absolutely his job. It's absolutely- Is there somebody else in Ohio or in Powell that has a piece of paper called use determination that they got? He has sent letters. He has sent emails. He even sent an email to us, go ahead and build an assisted living facility on this site, showing it's not retail, it's planned commercial entitled to all of the uses under commercial. The Fetch Road decision in our reply brief is very instructive on this point. The development text controls as to the full range of permitted uses under planned commercial zoning, simply because a drawing appended says concept plan and retail, that does not limit the actual zoning. And in fact, Judge Watson, while he looked at page 681 in the record, the concept plan, he didn't look apparently at 678, a survey drawing three pages just before that in the record that says unequivocally with no limitation, subject properties are zoned planned commercial. So what matters to you all is that our rights were vested by contract in this zoning, and when we were zoned planned commercial, we have a vested right in that zoning. That can't be changed by the city of Powell. That's not disputed. And so we are entitled to build this permitted use under 14.03. What exactly is the building you wanted to build? This was a little bit illusory in the briefing too. I think there's a difference between a motel and an apartment building. And it sounds like it was closer to an apartment building, a residential, people stay for 12 months and pay their own utilities. Well, your honor, the minimum stay is 30 days. It's licensed as a hotel under state law. It in fact can come furnished with someone at the front desk, and the state legislature, again, has licensed these as hotels. Mr. Betz, again, under oath acknowledged that he understands these are permitted uses in planned commercial districts throughout central Ohio. The use as permitted under 14.03 was not reasonably disputed at the trial court level. Instead, the city argued that we didn't have a vested right or it wasn't right. Well, in fact, Judge Watson did acknowledge that we could have a vested right through contract and that these claims were right. I apologize, I'm taking all the time. Can I ask you one more question? Why haven't you, as opposed to going up through all the state court levels and then federal court now in the Sixth Circuit, wasn't there a procedure just to go back to the city and some formal way to get permission to build what you want to build? Is there a reason why you haven't done that? Yes, I'll give you three reasons, actually, very quickly. We don't need to do so. The right has vested under clear principles of contract in the Sixth Circuit and U.S. Supreme Court, and we've invested millions of dollars. I'm sorry. Yeah, I got that. What are the other reasons? And the other reasons are Mr. Betz gave sworn testimony that he routinely gives these use determinations and he understands it's his duty to do so. He understands that it's not unusual to be asked and he's required under code to give them. And third, you've seen clearly in the record to do so would be futile. It requires vast engineering and planning, tens of thousands of dollars that they've clearly said they're never going to allow. And so under the Banham case, this court should not close its doors to us when pursuing further administrative procedures is a waste of time and money. All right. Mr. Miller, it's my understanding you did not file the application for the zoning certificate. Is that correct? That is correct, Your Honor. Instead, we asked merely the acknowledgement in keeping with our vested right in the existing zoning that we're permitted to build a residential hotel. Administratively, they would not give us that violation. I'm sorry. You informally asked or is there a procedure to ask without filing an application? Yes, Your Honor. We made a submission to the city with detailed information about this proposed use asking for a use determination. The zoning inspector wrote us back and said, I don't have enough information to make this determination. In his deposition, however, he said, no, in fact, I did have enough information. It is part of my job to make these determinations. And now I can tell you that it's not a permitted use. That's why. Why did you not file a formal application for the zoning certificate? Because the use determination is provided for by the Powell City Code, because our rights in the zoning are vested and it cannot be changed, unlike the Wedgwood case that you, Judge Griffin, decided and I argued. And frankly, they've already shown you that such an application would be futile. So Williamson County, for instance, wouldn't support an application and due process claims are instantly cognizable. And the Bannum case of this circuit says you need not resort to administrative process. That's a waste of time. Okay. All right. Any further questions at this point? I've got three minutes for rebuttal. Mr. Miller, any questions for Judge Boggs? All right. You'll have your three minutes rebuttal, Mr. Miller. Thank you. Good morning. Good morning, Your Honors, and may it please the court. My name is Yaz Ashrawi with Frost, Brown, Todd here on behalf of the Appalese, the city of Powell, Ohio, and Dave Betts in his official capacity as the city's development director and zoning administrator. Your Honors, this is a purely local zoning matter. This matter should not be before this court, nor should it have been before the district court before it. Despite Gulf Village seeking to develop its property in what it calls as a residential hotel, and despite its insistence that it's a permitted use, it has failed to comply with the most basic zoning requirements that are required across every jurisdiction in the state of Ohio that is the submission of an application for a zoning certificate or the submission of an application for a building permit. All right. I just asked that question, and the answer was Mr. Betts in his sworn deposition testimony said that he would have denied the zoning certificate had it been formally submitted. Now, why isn't that sufficient when you have sworn testimony as to what the action would have been? First of all, Your Honor, that was not Mr. Betts' sworn testimony, Mr. Betts indicated that from the information that he has, he has indicated that this does not appear to be a permitted use. Second of all, even assuming that Mr. Betts had made that determination or had that sworn testimony, it is not futile because Mr. Betts is not the final and last say on zoning. Mr. Betts makes decisions based on the information he has. A zoning certificate requires certain information, certain documents, and the developer to attest to the truth of those facts. Without that information, the city cannot make an informed decision. If Mr. Betts eventually... What further facts does the city need to know? I mean, they know what the agreed zoning is for the is proposed. What further facts does the city need here? Well, Your Honor, zoning permitted uses on a piece of property are determined by how the property is used. If you agree that in Ohio, a private property owner can use all the property for all uses except as prohibited. I do not... The presumption is for the free use of property as opposed to the other route. That is correct, except for the fact that in Ohio, it has been upheld that you can have prohibitary zoning, which means that, as is the case here and as is cited in our brief, any use that's not specifically permitted is prohibited. And that is in the agreements that Mr. Miller's client, Gulf Village, signed on to. Okay, the planned commercial zoning here is very broad, is it not? I mean, it really allows motels. It allows anything to facilitate the transportation of people or whatever. I mean, it's about the broadest category you could have, I would think. The zoning district of a planned commercial is broad. However, as Judge Watson indicated in his decision, this subarea, subarea G, was further limited by the development plan. And although Gulf Village wants to totally ignore that plan, it was specifically indicated in that application under subsection A, that that is the development plan that they are seeking. Further... What is the purpose of a development plan? Is this something that's commonly used by all developers? Was it just happened to be a one-off instance in this circumstance? I'm just trying to understand how this operates vis-a-vis the zoning regulation and then anything that you might subsequently have to approve. Of course, Your Honor, it is common in any planned development, as Gulf Village is and as subarea G is, there is a development text and a development plan. Those go hand-in-hand to determine what uses, what regulations, what prohibitions are on each of the parcels within that planned district. So the plan, in this instance, was specifically called out as a limitation because what was approved by the township was here are the types of uses. Restaurant, retail, office, and other uses as per plan. And motels, right? Isn't motels? No, motels, Your Honor, are only included in the resolution of the township zoning. Okay, why isn't this residential motel a motel under the zoning? Well, first of all, Your Honor, we would argue that the motel is not permitted on this site either. But in Gulf Village's own words, here is what a residential hotel is and how they're going to operate this residential hotel. They're going to have occupants that enter into 12-month leases, or they call them occupancy permits. The units will not be furnished. The units will be the primary addresses for those occupants. They will have to secure their own cable, their own television, their own telephone, and their own utilities. And this residential hotel will be advertised in local apartment guides to get tenants. That, Your Honor, is an apartment complex. And an apartment complex is certainly not in a motel. It's certainly not permitted in a commercial use. And there's testimony from Trey Geller, the representative for Gulf Village, that this is not zoned residential and that an apartment would be a residential use. So, you can call it a motel. Is it normally a lower classification than commercial use? I mean, in most zoning ordinances, isn't a residential use a lower, less used than commercial? I would say it would depend on the particular zoning text for any district or piece of property. It can vary among jurisdictions. This district has specific zoning for residential or apartments, right? Correct. This is not included in that? That's correct, Your Honor. This was limited, even assuming... So, Gulf Village's arguments rely on three fallacies. First and foremost, that this is zoned for broad commercial purposes, which it's not. We know that from the limitations of the development plan, which they agreed to. Can I go back to my questions about the development plan? Because for me, the case hinges on this, and I still can't quite figure out how this operates. Suppose Gulf Village wanted to build an office, clearly covered by the development plan. What additional permissions would they need from the city to build an office that everyone agrees is covered by the plan they submitted and you approved previously? This case hinges on the following. They would need to submit a zoning certificate application and receive a zoning certificate. They would then need to... And Mr. Miller and Gulf Village would not dispute that. Even if they wanted to build an office or retail development on this parcel, they would need to submit an application for a zoning certificate and they would need to submit an application for a building permit. Because without those two items, they do not have a vested interest in the zoning and use of that property, and as this court decided, which one? What is the point of the zoning certificate? Is that to say we've looked at the proposal and measured the zoning rules, the development plan, something else? The point of the zoning certificate, Your Honor, the zoning application has a number of items that it requires for the city to make an informed decision. The zoning the amendment and the zoning does not, it creates a zoning district. It defines the uses permitted on certain properties, but the zoning certificate establishes the particular use for the particular property. For example, let's assume for the sake of this argument, this is in fact zoned commercial and assuming for the sake of this argument that a residential hotel is in fact zoned commercial. This particular property, however, has not been certified to be used as a residential hotel. It's simply under the broad category of commercial. The zoning certificate establishes the particular use and anytime there's an establishing of a particular use or a change in that use, there needs to be a zoning certificate. So counsel, counsel, at this point, is this where you're making the argument that there's no such thing as a use determination? In other words, that if they had had, as I understand it, they're willing to file a zoning certificate and a building permit as long as you say that in general, this is a permitted use. I presume if they want to build a 50-story apartment hotel, there's probably something against that that would come in with the zoning certificate. But would anybody else in your hypothetical say, to heck with any other permission, we'll go straight to the zoning certificate? Is that your argument at this point? Not quite, your honor. The use determination that Gulf Village has argued and has included in its amended complaint is not a process delineated in the local zoning code. It is true that Dave Betts sits down and meets with any landowner, any developer, any prospective landowner about what uses could typically go on a piece of property, as he did here. And in 2014... And does he, in fact, whether with a city seal on it or not, by email, physical mail, or otherwise, say yes, this is okay, or no, you lose, go away? There is no official manner in which he does this. These are very informal. But in fact, it happens, is that right? Of course, and it happened here. Okay. Yes, sir. All right. Okay. And so he made a negative use determination, which says don't bother to file a zoning certificate, you lose. Is that fair? That's not to be a proper use of this property. The only way to fully determine whether it is or not is to determine how the property is being used. When the Gulf Village itself tells us it's being used identically to an apartment complex, he can certainly make a determination at that point, informally, again, that this does not appear to be a permitted use on the property. But as Gulf Village alleged... Is that turning on things like how long is the lease, and whether it's furnished, and whether you have a doorman in a uniform? Well, it first turns, Your Honor, in the city's mind, it first turned on that development plan, which said even as a hotel, motel, whatever you want to call it, this is not permitted. But second of all, of course, under Ohio law, zoning uses and permitted uses turn on the use of the property, not what they're called, not how they're licensed by the state. You can call a steakhouse, a McDonald's, and vice versa, but it doesn't matter what you call it. It matters how it's being used and operated. It seems to me there's two questions. So there's this question about how it's being operated, but the threshold question is what is permitted? And first we have to decide what's permitted. And when you get that application for the zoning certificate, are you looking back at the development plan or the broader zoning regulations to determine what's permitted? The city is looking at that development plan, Your Honor. But even assuming, and that specifically does not include the broad commercial uses that Gulf Villages argued, it limits those uses. But even assuming- So the zoning plan is a one-way ratchet against the developer. That's correct. In other words, they would otherwise have at their disposal the full benefits of the zoning law. But since they submitted a development plan, it's your position that they have limited themselves to what they've specifically written there. And when they come to you for a zoning certificate, you're going to measure that against what they put in their development plan only. That's correct, Your Honor. But even assuming we go back- And counsel, the reason that they lose on that is that the word commercial would not include a hotel. Well, I think that's the secondary argument, Your Honor. This site is not zoned for those broad commercial uses under that development plan. That sub area is for retail, office, restaurant, and other uses as per plan. And for this specific site, it's identified as a retail parcel. But even assuming we go back to the text of the zoning resolution, those broad commercial purpose, even under those broad commercial purposes, the argument still fails because, one, in 1403, I believe, any use that's not specifically identified as permitted is prohibited under that zoning resolution, which is prohibitory zoning, which is permitted under Ohio law. Two, as we've discussed- And what words should we look for where it says anything not permitted is prohibited? I'm sorry, Your Honor? Is there a particular page or section of the document you're referring to that says anything not permitted is prohibited? Yes, Your Honor, and it's in our brief. I do not have that specific page number here in front of me, but I believe it is in the zoning resolution that was attached to the Plaintiff's Motion for Summary Judgment. It's under Section 14 of the Township Zoning Resolution, and it says- He keeps citing 1403 and 1406. Is it one of those? It is just below those sections. I believe it's 1407. Okay. It appears that my time is up, but I would like to wrap it up here quickly, and if there are any remaining questions, at the end of the day, there's no vested interest because, as this Court decided Wedgwood, an interest does not vest until an application is filed and the local zoning processes are complied with. Neither of those have happened here. Even assuming they have, this is not a permitted use on the property under the development plan, which the City would argue is the binding zoning for this, or even under the more generic commercial purpose. You're calling something a hotel, which is an apartment, by Gulf Village's own words, and there is no dispute that an apartment is not permitted, even in a broad commercial setting, because it is a residential multifamily use. All right. Thank you, Counsel. Any further questions? Judge Boggs? No. All right. Thank you. Thank you. All right. Rebuttal. Three minutes. Mr. Miller. Thank you. Thank you. And I want to directly address a question by Judge Boggs and a question by Judge Riedler. First, you can look, Judge Boggs, in 1406 or 1407 for some requirement that the developer itemize every permitted use to be put on the property, and you won't find it. It pursuant to 14.03, not some made-up new category, but planned commercial in 1406B2A only requires that the developer itemize specific limitations on commercial uses. In other words, you're entitled to the full number of uses under 14.03 unless you prohibited it. That didn't take place here. Instead, what we have, Judge Riedler, when you ask, well, what is the development plan? The development plan is all of the standards before you within Record ID, Page ID 662 to 682. All of those standards are the development plan. And in fact, 662 and 666 through 666, all of those standards are identified as such as the development plan. The concept plan, contrary to what Mr. Ashwari just said, is identified as only that, a concept plan. And again, concept means a general notion, and that does not a zoning law make when Judge Griffin is correct that any prohibition on the use of property needs to be specifically articulated. We don't have that here. So instead, you would be turning zoning on your head to allow the position of the city to go forward here. Planned commercial and planned developments are allowed to provide maximum flexibility to developers, not conscribed flexibility. That's why a developer pursues this type of flexibility. And so what we have here is a permitted use under 14.03. The spirited defense I heard today that a residential hotel is not a commercial use is the first I've heard of it. You won't see it in the record below. Instead, it was only contested. They didn't even move for summary judgment on our declaratory judgment action. They instead said we didn't have a vested right, not true under the contract law of this circuit, and they said the claim wasn't right. I think you've seen for yourself today, any application would be futile. And Dave Betts himself acknowledged this is his own planned commercial, Judge Radler. And Judge Griffin, he also acknowledged, I know what I'd do with this. It would be rejected. And so, Your Honor, under all of the evidence today before you, there is, at the very least, disputes of material fact as to whether a plaintiff has a protected property interest and whether a residential hotel is a permitted use. Those are the only two basis for dismissal by the trial court. Those should be reversed, and plaintiff's claims for substantive due process, procedural due process, and declaratory judgment must go to a jury. All right. So, Mr. Bill, does that mean you're not asking us to say what the zoning issue is just to say that there is a substantive due process issue? We have asked. You're not asking us to say you definitely win. Forgive me, Judge Boggs. No, we are asking that you go ahead and enter judgment for the appellants, because four years down the road, all of the evidence says that this is a permitted use and thus a vested right. Okay, so when you talked about going to a jury, that was a fallback. That is only a fallback because Your Honor knows that the standard here is, is the evidence so one-sided that you must find as a matter of law? Certainly for the city of Powell, for all the reasons we've described, it is not. But I would tell you that every single piece of evidence in the record, both on the text and the witness testimony, supports our position such that you could enter judgment that this is a permitted use, that in fact, we have a vested right, and there have been violations of procedural and substantive due process. I, in fact, ask that you do so, Your Honor. So total judgment in your favor is what you're asking. Is that right, Mr. Newman? That is correct. On substantive due process, procedural due process, and our declaratory judgment claim that this is a permitted use because Ohio zoning law favors the landowner, not the government. And any restriction on private property needs to be strictly construed in favor of the free use of property. And so we do submit that this was a case where judgment should have been granted to the appellants. And this matter can proceed to a jury for a trial on damages. Okay, on damages. All right, I've got that. All right, any further questions? Judge Boggs? Judge Radler? Thank you, counsel. Case will be submitted. You may call the next case. Thank you.